[Cite as *W. Carrollton v. Wax*, 2013-Ohio-188.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

CITY OF WEST CARROLLTON          :
                                 :          Appellate Case No. 25319
          Plaintiff-Appellee     :
                                 :          Trial Court Case No. 12-TRC-311
v.                               :
                                 :
ROGER D. WAX, JR.                :          (Criminal Appeal from
                                 :           Miamisburg Municipal Court)
          Defendant-Appellant    :
                                 :

· · · · · · · · · ·

O P I N I O N

Rendered on the 25th day of January, 2013.

· · · · · · · · · ·

LORI KIRKWOOD, Atty. Reg. #0053384, 7501 Paragon Road, Lower Level, Dayton, Ohio 45459
          Attorney for Plaintiff-Appellee

JACK HARRISON, Atty. Reg. #0061993, Post Office Box 292767, Dayton, Ohio 45429
          Attorney for Defendant-Appellant

· · · · · · · · · · · ·

FAIN, P.J.

{¶ 1}     Defendant-appellant Roger D. Wax appeals from his conviction and sentence

for: Operating a Motor Vehicle While Under the Influence of Alcohol, as a second offense within six years, in violation of R.C. 4511.19(A)(1)(a); Operating a Motor Vehicle While Under the Influence of Alcohol Within 20 Years of an OVI Conviction and Refusing to Submit to a Chemical Test, in violation of R.C. 4511.19(A)(2)(b); Driving Under a Suspension, in violation of R.C. 4510.11(A); Driving with an Expired Registration, in violation of R.C. 4503.11(A); Speeding, in violation of R.C. 4511.21(D); and Driving without Using a Seatbelt, in violation of R.C. 4513.263(B)(1). He contends that his convictions are against the manifest weight of the evidence. We disagree.

{¶ 2} The only charge on which the evidence was conflicting was that of OVI. The testimony of the two police officers who testified for the State was consistent, and not unworthy of belief. The trial court, as the finder of fact, was not unreasonable in choosing to credit their testimony. Accordingly, the judgment of the trial court is Affirmed.

**I. Wax Is Stopped for Speeding, Subjected to Field Sobriety Tests,**

**and Arrested for Operating a Motor Vehicle While Under the Influence**

{¶ 3} In its written decision finding Wax guilty as charged, the trial court made the following findings of fact:

The witnesses' testimony on most of the facts in this case was in agreement. The Defendant was operating a motor vehicle. There is no dispute that the Defendant's Ohio operator's license was under an OVI administrative license suspension at the time of the alleged offense. There is no dispute that the Defendant was pulling a trailer that did not have a valid license plate sticker. Additionally, there

was no dispute that the Defendant did refuse to provide a breath sample after being placed under arrest for OVI. There additionally appeared to be a general agreement among the witnesses that the Defendant was operating his motor vehicle above the posted speed limit of 45 mph, and was not wearing his seatbelt.

The [principal] dispute among the witnesses was whether the Defendant's ability to operate a motor vehicle was appreciably impaired by alcohol, and whether that impairment was reflected by the Defendant's performance on the field sobriety tests.

\* \* \*

Officer [Moureen] Flaute testified that she administered the field sobriety tests (HGN, walk and turn, and one leg stand) to Mr. Wax, pursuant to the required standards, which was not disputed by the Defendant, and that it was her opinion after assessing the Defendant's performance on said tests, that the Defendant was appreciably impaired by alcohol. Officer Flaute testified that during the walk and turn test, the Defendant took eight (8) steps, then turned and took ten (10) steps back, although he had been instructed to take nine (9) each way. The officer also testified that when he made the turn, the Defendant got his legs tangled up and had to stop to "untangle" himself before continuing. Officer Flaute further testified that other actions and behaviors of the Defendant also indicated his impairment, including what she referred to as "mush mouth," and "thick tongued" speech.

Further, [t]he Defendant's statement that he had not consumed any alcohol, yet refused to submit to a breath test (which would have proven his sobriety if his

allegations are true) is extremely damaging. Also, the underlying fact that the Defendant was operating a motor vehicle while under an OVI suspension at 2:30 a.m., shows that he was willing to flaunt the law.

A problem with the City of West Carrollton's case, is Officer Flaute's broken cruiser video recording system. The Officer testified that the video recording system in her cruiser had been broken for a few months prior to the arrest of Mr. Wax. The Defendant's performance on the field sobriety tests would have been incontrovertible had the officer's cruiser camera been properly functioning, and the Court would not have had to rely solely on the witnesses' testimony as to Mr. Wax's performance. The purpose of a cruiser camera is to preserve and protect evidence and avoid this he said/she said situation. It enables an independent trier of fact to determine the defendant's sobriety based on the video recording, without having to rely upon the opinion of the witnesses and the veracity of their testimony.

After having thoroughly and carefully considered all of the evidence, including the testimony of the witnesses, their respective demeanor and credibility, and the arguments presented by counsel, the Court finds that the State has proven each and every element of all of the offenses charged, beyond a reasonable doubt.

{¶ 4} The State presented two witnesses: West Carrollton police officers Moureen Flaute and Dan Wessling. Flaute's testimony is summarized above. Flaute stopped Wax for speeding (62 mph in a 45 mph zone, according to her radar), administered the field sobriety tests, elicited Wax's refusal to submit to a chemical test, and arrested Wax. Flaute testified that on the one-leg-stand test, Wax only lifted his foot one inch off the ground instead of six

inches as he was instructed to do, did not point his toes forward, and raised his arms "as balance."

{¶ 5}    Wessling arrived on the scene before Wax got out of his vehicle, and observed the events that followed.   He corroborated Flaute's testimony.

{¶ 6}    Wax presented three witnesses: his thirteen-year-old son, Roger D. Wax, III, his long-time friend Pamela Burkhardt, and himself.   Burkhardt and "little Rog," as the son was referred to by Burkhardt, were in another car that Burkhardt was driving.   Burkhardt pulled in behind Flaute after Flaute stopped Wax.   According to Burkhardt and Wax, Wessling had parked alongside Flaute, behind Wax.

{¶ 7}    Burkhardt and "little Rog" testified that they could see the field sobriety tests, and that Wax performed the heel-to-toe and one-leg-stand "perfectly fine."   Wax also testified that he performed the tests satisfactorily.   Wax denied that he had been drinking.   He testified that he had left home at 5:30 in the morning to work on an awning at a private home in Cleveland.   He could not remember the owner's name.   He had returned from Cleveland between 11:30 and midnight, and joined Burkhardt and "little Rog" at Burkhardt's mother's house.   The three then went to a Taco Bell restaurant, and had left the Taco Bell when the stop occurred.

{¶ 8}    Wax explained his refusal to submit to a chemical test:

Because they already, they were, I didn't trust them, they were already saying that I was drunk and I wasn't.   So, I mean, I felt that they were, I didn't trust them, they had already arrested me, so, why would I do that.

{¶ 9}    Wax acknowledged that he was under a suspension for OVI when he was

stopped.

{¶ 10}   In rebuttal, Flaute testified that the views of Burkhardt and "Little Rog" of the field sobriety tests were obstructed by the police vehicles.   She also testified that Burkhardt told her that Wax had been drinking earlier, and asked her to allow Burkhardt to drive Wax home.

{¶ 11}   Burkhardt, in surrebuttal, denied having made the statement about Wax having been drinking earlier.   She also drew the relative positions of the vehicles, including the police cruisers, and the site of the field sobriety testing.   This drawing was admitted as the trial's sole exhibit.   It shows that Burkhardt and "Little Rog" were in a position to have observed the field sobriety testing.   Of course, the trial court was not required to credit Burkhardt's testimony that it accurately reflects the scene.

## II.   Wax's Conviction Is Not Against the Manifest Weight of the Evidence

{¶ 12}   Wax has not indicated, in his notice of appeal, what he is appealing from. We will therefore assume that he is appealing from the judgment entry of conviction and sentence, in its entirety.   From his brief, though, it is clear that he is only questioning his convictions for OVI.

{¶ 13}   Wax has also not set forth an assignment of error, as required by App.R. 16(A)(3).   The argument set forth in Wax's brief, in its entirety, is as follows:

Very simplistically, Appellant strongly feels that the trier of fact could not possibly have found Defendant guilty beyond reasonable doubt.

The evidence, no erratic driving, was direct from the two (2) officers and three (3) defense witnesses. The video, had it been working[,] would have resolved the issue.

The case, following the admission of direct testimony, was one of equipoise. That is, the case was stalemated; in such a situation, defense wins, <u>beyond a reasonable doubt</u>. [Emphasis sic.]

Appellant feels a reading of the transcript, which is blissfully short, leaves the Court with a paramount reasonable doubt, at least.

The Court, page 2 of Decision, paragraph 1, seemed to be unduly persuade [sic]. Counsel for Appellant was likewise present, and was remarkably unpersuaded, for example Ms. Flaute defined speeding as erratic driving Tr. Pg. 17, L 10-11; what on earth is she describing?

Two factors influence this case: 1. The bias given the trier of fact, he's judging the credibility of the witnesses. 2. The fact that police officers have no more granted credibility than civilians.

Consequently, as there was no erratic driving observed, the Court was confronted with equally offsetting evidence by 3 to 2, which left the trier of fact in equipoise.

Beyond a reasonable doubt is the hallmark of any criminal (traffic case); reasonable doubt is glistening throughout the transcript.

**{¶ 14}** From his argument, we infer Wax's assignment of error to be that his conviction for OVI is against the manifest weight of the evidence.

{¶ 15} In determining whether a conviction is against the manifest weight of the evidence:

> The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720 - 721 (1st Dist.1983); quoted approvingly in *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 16} Determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of fact. *State v. Funkhouser*, 7th Dist. Belmont No. 02-BA-4, 2003-Ohio-697, ¶ 8.

> Because the factfinder, be it the jury or, as in this case, the trial judge, has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4.

{¶ 17} Wax is correct that the testimony of his witnesses and the State's were in direct conflict on the issue of his performance on the walk-and-turn and one-leg-stand field sobriety tests. His witnesses were not able to observe his performance on the horizontal gaze nystagmus test. As the trial court noted in its decision, Officer Flaute was trained in the

administration of field sobriety tests. The trial court found her testimony to be "extremely persuasive." It is within the prerogative of the finder of fact to find the testimony of one witness to be more persuasive than that of another. Once upon a time, Anglo-Saxon jurisprudence involved the mere counting up of sworn statements on the two sides of a factual controversy, with the decision going to the side with the greater number, but that is ancient history.

{¶ 18} The trial court was also persuaded by Wax's refusal to submit to chemical testing, apparently discrediting Wax's explanation that he distrusted the test and the persons administering it. We cannot fault the trial court for attaching significance to Wax's refusal, inferring from it that Wax knew a chemical test would reveal a prohibited concentration of alcohol.

{¶ 19} We conclude that this is not "the exceptional case in which the evidence weighs heavily against the conviction." Wax's inferred assignment of error is overruled.

### III.  Conclusion

{¶ 20} Wax's inferred assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . .

DONOVAN and HALL, JJ., concur.

Copies mailed to:

Lori Kirkwood
Jack Harrison
Hon. Robert W. Rettich, III

[Cite as *W. Carrollton v. Wax*, 2013-Ohio-188.]